# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

v.                                                                                    **CAUSE NO. 1:16CR35-LG-RHW-3**

**TRACY JERMAINE RICHARD**

## ORDER FINDING DEFENDANT COMPETENT TO STAND TRIAL

**THIS MATTER IS BEFORE THE COURT** to determine whether the defendant, Tracy Jermaine Richard, is competent to stand trial. After reviewing the three confidential forensic psychological evaluation reports submitted to the Court and considering the testimony, evidence, and argument presented at the competency hearing conducted on June 20, 2019, the Court finds that Richard is competent to stand trial.

## BACKGROUND

On March 3, 2016, Richard was indicted for conspiracy to possess with intent to distribute cocaine hydrochloride and attempt to possess with intent to distribute 1 kilogram of cocaine hydrochloride. He was arrested on February 28, 2018. Counsel for Richard filed a Motion for Competency Exam, which was granted.

Richard was evaluated by psychologist Kale E. Kirkland, Ph. D., in June 2018. Dr. Kirkland observed that malingering was present. Richard "put forth minimal effort during the assessment. He was exaggerating his intellectual deficits and his experience of psychosis." (Report 6, ECF No. 89.) Dr. Kirkland evaluated Richard's knowledge of the courtroom and the trial process using the ECST-R

instrument. Richard claimed that he did not know the charges against him, the name of his attorney, or the role of a jury. He could not identify any figures on a courtroom diagram. Dr. Kirkland opined that "[i]t is likely that [Richard] understands the allegations against him and the potential consequences associated with his charges, but he cannot adequately discuss his case or provide adequate discussion for his decision-making with respect to his legal defense." (*Id.*) Dr. Kirkland attempted to administer the WAIS-IV, but Richard "put forth minimal effort, and was intentionally missing items." (*Id.* at 5.) Therefore, Dr. Kirkland could not obtain a valid IQ score. Dr. Kirkland noted that administration of the Weschler Intelligence Scale for Children – Revised (WISC-R) in 1987 revealed that Richard's full-scale IQ was 58. Administration of the WAIS-R in 1997 revealed a full-scale IQ score of 61. Dr. Kirkland determined that Richard has a mild to moderate intellectual disability that prevents him from understanding the nature and consequences of the proceedings against him and from properly assisting in his defense.

The Court conducted its first competency hearing concerning Richard on August 21, 2018, and determined, based on Dr. Kirkland's report, that Richard was at that time suffering from a mental disease or defect that rendered him mentally incompetent. The Court committed Richard to the custody of the Attorney General for treatment and evaluation. While in the custody of the Attorney General, Richard was evaluated and treated by forensic psychologist Evan S. Du Bois, Psy. D., and several other mental health professionals at the Federal Medical Center in

Butner, North Carolina. Dr. Du Bois observed that, while Richard frequently complained of memory problems, Richard "was able to navigate the institution without difficulty, attend appointments which he chose to attend, and utilize the telephone system to communicate with family." (Report 4, ECF No. 91.)

While at FMC Butner, Richard displayed some knowledge of past criminal proceedings against him by reporting that he had previously been incarcerated for cocaine. He also stated that he had been arrested for burglary because police claimed he "kicked the door in." (*Id.* at 2.) He claimed that he was arrested for a parole violation due to a urine test.

Richard was enrolled in several groups at FMC Butner aimed at restoring competency and treating mental illness, but he stopped attending each group after the first session because he claimed that he did not understand what was being said at the group meetings. He was prescribed multiple medications due to his complaints of hallucinations, but he claimed that the medications did not help. During a session with FMC Butner's chief psychiatrist, Richard claimed he did not know his age, but he knew the number of medications that he was taking. He also disputed the assertion that he had refused to sign a consent form, by stating "How did I refuse to sign if I can't read or write?" (*Id.* at 5.)

Richard's phone calls at FMC Butner were monitored. In conversations with his girlfriend[1], Richard displayed no difficulty communicating or remembering prior

---

[1] Richard's girlfriend at that time was Jiahni Walker. As explained in more detail below, Richard is now married to Mrs. Walker.

conversations. He was also able to provide her with instructions for putting money in other inmates' accounts so that he could call her from different accounts. One of the phone calls took place on December 28, 2018, soon after a meeting with Dr. Du Bois. Richard had told Dr. Du Bois that he could not remember why he was arrested or what would happen when he returned to Court. However, during the phone call with his girlfriend, Richard discussed in detail what had happened during his session with Dr. Du Bois. He stated that Dr. Du Bois was going to find him competent, and that he would plead guilty and face about two to three years in prison. He also said that he would probably be released on bail when he returned to court. Finally, he asked his girlfriend to relay this information to his attorney.

Intellectual testing was not performed on Richard at FMC Butner because of his past poor performance and engagement during such testing. FMC Butner providers administered the Test of Memory Malingering (TOMM) due to Richard's claim of severe memory problems. In his report, Dr. Du Bois explained,

> The TOMM is a well-validated instrument designed to assess whether an individual is feigning memory deficits by comparing the person's performance with the recall ability of unimpaired and neurologically injured groups, as well as comparing performance to that expected by chance. The test is a 50-item memory recognition task in which an individual is presented with a list of 50 pictures and then asked to select each of the pictures previously shown from two choices. For example, given the simplicity of the task, during validation studies of TOMM, "normal" individuals in the community correctly recalled approximately 49 of 50 items by Trial 2 and the Retention Trial (which follows a 15-minute delay). Even individuals with serious brain injuries and dementia perform well on this test, obtaining on average at least 45/50 items correctly.

-4-

(*Id.* at 7.) On the TOMM, Richard scored twenty-two and twenty-four out of fifty on Trial 1 and Trial 2, respectively. Dr. Du Bois opined that "[t]hese results strongly suggest that he put forth effort to provide ***incorrect*** responses and thus into appearing impaired in memory functioning." (*Id.*) Dr. Du Bois also noted that Richard's behavior during sessions with medical professionals was very different than his behavior during phone calls and while interacting with other inmates at the facility. Dr. Du Bois opined that this was further evidence of malingering.

The Inventory Legal Knowledge (ILK) was also administered during Richard's stay at FCM Butner. "The ILK is designed to assess response styles of defendants undergoing competency evaluations." (*Id.* at 9.) Richard's ILK score "suggested he was not putting forth adequate effort and was likely attempting to feign deficits in legal knowledge during this administration." (*Id.*)

Dr. Du Bois diagnosed Richard with malingering and antisocial personality disorder based on the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5)*. "Malingering is defined in the *DSM-5* as 'the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives.'" (*Id.* at 7.) Dr. Du Bois noted that these diagnoses do not rule out the possibility that Richard has intellectual deficits and/or a psychological disorder, but "it is impossible to accurately document the nature or severity of any deficits he may have until such time that he is willing to provide adequate motivation for testing." (*Id.*) Dr. Du Bois further opined that Richard's assertions of memory impairment and an inability to read and write are not

-5-

genuine. Furthermore, "[h]e was able to establish relationships with several other inmates, including making arrangements to utilize their phone accounts to contact his family and/or friends." (*Id.* at 8.) Dr. Du Bois determined that Richard is not currently suffering from a mental disease or defect that renders him incompetent to stand trial, because he can understand the nature and consequences of the proceedings against him and can assist in his defense.

The Court scheduled another competency hearing, but counsel for Richard requested a continuance so that Richard could be subjected to further evaluation. The Court granted the continuance, and Richard's attorney retained psychologist Amanda L. Gugliano, Psy. D., to perform the evaluation. At this evaluation, Richard reported that he had recently married Jiahni Walker, with whom he has a son. He also stated that he has three children from a prior relationship. He stated that he had been in prison once or twice before, but he could not remember why. He knew that he was on probation and that he reports to a probation officer once a month. He remembered his mother taking him to some type of mental health professional when he was in elementary school. He stated that he has never had a driver's license, but he can drive if he is familiar with the area. Richard cried while discussing his deceased parents and his suicidal ideation. He claimed that he sees "dead folks," he likes to watch cartoons, and he has an imaginary friend. He denied knowing anything about the current legal proceedings against him, aside from his attorney's name and his recognition that his attorney is supposed to help him out.

Dr. Gugliano administered the Rey 15-Item Memory Test, "which is a memory test designed to screen for suboptimal effort and feigned memory impairment." (Report 13-14, ECF No. 96.) In her report, Dr. Gugliano explained:

> A recall score of less than 9 on this measure is indicative of suboptimal effort and possible feigning of memory deficits. A combined recall and recognition score of less than 20 indicates feigning. Mr. Richard obtained a recall score of 6 and a combined score of 10, suggesting that he was putting forth poor effort and was attempting to feign memory deficits. However, it is important to note that this instrument was not normed on individuals with intellectual disabilities and should be interpreted with caution as it may yield false positives.

(*Id.* at 14.) Dr. Gugliano also administered the TOMM test, which once again suggested that Richard was feigning memory impairments. Dr. Gugliano cautioned that the TOMM test "has also not been normed on individuals with intellectual disabilities and should be interpreted with caution. Research indicates that it may be valid with individuals with mild intellectual disabilities when adjusted cutoff scores are used." (*Id.*) Finally, Dr. Gugliano administered the Adaptive Behavior Assessment System – Third Edition (ABAS-3), which is "a comprehensive, norm-referenced assessment of adaptive skills for children and adults." (*Id.*) Richard's wife, Jiahni Walker, was used as the rater for this test. Mrs. Walker's responses indicated that Richard has significant conceptual, social, and practical deficits.

Dr. Gugliano diagnosed Richard with an intellectual disability and malingering. She did not perform intelligence tests on Richard because she was concerned that Richard was "putting forth poor effort on cognitive tasks." (*Id.* at 16.) However, she opined that his current IQ is "likely consistent with his previous IQ scores." (*Id.* at 16.) She opined that Richard's ability to function well at FMC

Butner is not instructive because "structured environments (e.g., a prison or hospital) do not allow individuals to demonstrate adaptive skills typical in day-to-day life." (*Id*. at 16-17.) She also noted that "individuals with intellectual disabilities may appear to function higher in highly structured environments than they do when in the community." (*Id*. at 17.) Dr. Gugliano acknowledged that Richard "likely has at least some factual understanding of basic legal concepts," but she opined that "[i]ndividuals with IQ scores similar to Mr. Richard's previous scores typically have difficulty comprehending and rationally applying legal concepts, even after receiving competence restoration services." (*Id*.)

The Court conducted a second competency hearing on June 20, 2019, and heard testimony from Dr. Du Bois, Richard's older sister, and Richard's wife. Dr. Du Bois testified that, during his stay at FMC Butner, Richard called Jiahni Walker 440 times from seven different inmate accounts, one of which was Richard's own account. To use another inmate's account, Richard had to obtain the other inmate's pin number and then arrange for the other inmate to say his name for the voice recognition at the beginning of the call. Richard also had to provide the other inmate's information to his girlfriend in advance of each call so that she could apply funds to the other inmate's account. As a result, Dr. Du Bois opined that Richard's conduct related to the phone calls indicated that Richard understood the facility's rules and devised a way to violate those rules. The conduct required the ability to communicate, to relate to others, and the ability to make plans.

While Richard, his sister, and his wife frequently claim that Richard has difficulty socializing and is a loner, Dr. Du Bois noted that Richard was almost always interacting in the common area with other inmates at FMC Butner. Dr. Du Bois also opined that Dr. Gugliano's testing of Richard showed even more evidence of malingering than previous tests performed at FMC Butner. Dr. Du Bois testified that there is no correlation between IQ and competency, and functional capacity is much more indicative of competence to stand trial.

Richard's sister, Janice, testified that Richard has had intellectual difficulties since childhood that prevented him from attending church and school on a regular basis. She handles his social security benefits because he is incapable of handling them himself.

Richard's wife, Jiahni Walker, testified that she and Richard were married in April 2019, but they have lived together for several years and have a four-year-old son. Walker is not able to take care of their son, so she provides all the care that their son needs, and he attends day care when she is not at home. She described Richard as child-like and incapable of communicating well. She admitted that Richard used different inmates' accounts to call her and that he would give her the information needed to pay for the calls. She claims that she did most of the talking during those calls.

## DISCUSSION

18 U.S.C. § 4241(a) provides that a district court may grant a hearing to determine competency where "there is reasonable cause to believe that the

defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent." The court must determine "by a preponderance of the evidence" whether "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d).

> To be deemed competent, the defendant must have the present ability to consult with his lawyer with a reasonable degree of rational understanding and have a rational as well as factual understanding of the proceedings against him. A district court can consider several factors in evaluating competency, including, but not limited to, its own observations of the defendant's demeanor and behavior; medical testimony; and the observations of other individuals that have interacted with the defendant. A defendant who has it within his voluntary control to cooperate, is not incompetent merely because he refuses to cooperate.

*United States v. Simpson*, 645 F.3d 300, 306 (5th Cir. 2011) (internal citations, alterations, and quotation marks omitted).

Tests administered during each of Richard's forensic psychological examinations suggested that Richard was malingering. When there is strong evidence of malingering, a court is warranted in giving little weight to test results that require self-reporting and/or cooperation on the part of the defendant. *United States v. Gray*, No. H-15-060-1, 2017 WL 908561, at *3 (S.D. Tex. March 7, 2017). Richard's lack of cooperation and apparent malingering prevented all the psychologists who recently examined him from performing intelligence tests to determine his IQ.

The Court finds that the evaluation performed at FMC Butner is most instructive because medical professionals at Butner had the opportunity to observe and evaluate Richard over a much longer period than Dr. Kirkland and Dr. Gugliano. The professionals at FMC Butner also had the unique opportunity to observe Richard outside of the testing environment by monitoring his interaction with other inmates in common areas and his phone calls. This opportunity allowed FMC Butner providers to observe Richard's capabilities without the presence of malingering, thus providing a more accurate evaluation of his ability to communicate with others and understand what is occurring around him.

Richard's attempt to circumvent FMC Butner's phone monitoring by utilizing other inmates' accounts is particularly telling. Richard was able to understand how the phone system worked at the facility. He was also able to communicate and cooperate sufficiently with six individuals to use their accounts. He also was able to communicate what was occurring during sessions with his psychologist to his girlfriend and provide her with instructions to reimburse other inmates for the use of their accounts. During at least one phone call with his girlfriend, he demonstrated a good understanding of the effect of a competency determination, the plea process, bail procedures, and even a possible sentence. He knew his attorney's name and wanted to ensure that information was relayed to his attorney to assist in his defense. This displays a level of reasoning, planning and sophistication not in accord with a claim of incompetence.

The Court finds that Richard's well documented malingering is evidence that he understands the legal proceedings against him, because it suggests that he knows that feigning memory loss and an inability to comprehend will assist him in being found incompetent to stand trial. Although Richard may suffer from some level of intellectual disability, Richard's conduct demonstrates that he has the present ability to communicate and consult with his attorney sufficiently to assist with his defense. He has also displayed both a rational and a factual understanding of the proceedings against him.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that based upon the totality of the evidence, the defendant Tracy Jermaine Richard, is not presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Therefore, the defendant, Tracy Jermaine Richard, is **COMPETENT** to stand trial.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that this matter is set for jury selection and trial on July 29, 2019, at 9:00 a.m.

**SO ORDERED AND ADJUDGED** this the 23rd day of June, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE